**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| SHERRIE L. M., | ) | No. CV 19-6945-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL, COMMISSIONER | ) | |
| OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Sherrie L. M.[1] ("plaintiff") filed this action on August 9, 2019, seeking review of the Commissioner's denial of her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on August 28, 2019, and September 24, 2019. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on July 28, 2020, that

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1982.  [Administrative Record ("AR") at 28, 222, 227.]  She has past relevant work experience as a parking lot attendant and as a server.  [Id. at 28, 55-57.]

On June 11, 2015, plaintiff filed an application for a period of disability and DIB and also for SSI payments alleging in both that she has been unable to work since December 1, 2014.  [Id. at 16; see also id. at 222-26, 227-41.]  After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [Id. at 131-32.]  A hearing was held on February 28, 2018, at which time plaintiff appeared represented by an attorney, and testified on her own behalf.  [Id. at 39-61.]  A medical expert ("ME") and a vocational expert ("VE") also testified.  [Id. at 50-54, 54-59.]  On July 12, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from December 1, 2014, the alleged onset date, through July 12, 2018, the date of the decision.  [Id. at 16-30.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [Id. at 216-21.]  When the Appeals Council denied plaintiff's request for review on June 10, 2019 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means

only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2.  Lounsbury, 468 F.3d at 1114.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 1, 2014, the alleged onset date.[2]  [AR at 18.]  At step two, the ALJ concluded that plaintiff has the severe impairments of asthma; headaches; lower extremity edema; cervical spine

---

[2]     The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021.  [AR at 17.]

disc disease/cervicalgia; obesity; and depressive disorder.  [Id. at 19.]  At step three, the ALJ

determined that plaintiff does not have an impairment or a combination of impairments that meets

or medically equals any of the impairments in the Listing.  [Id. at 23.]  The ALJ further found that

plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20

C.F.R. §§ 404.1567(b) and 416.967(b),[4] as follows:

> [She can perform light work] involving occasional climbing of ramps/stairs, no
> climbing of ladders/ropes/scaffolds, no exposure to vibrations, moving machinery,
> pulmonary/respiratory irritants, performance of simple, routine tasks, and occasional
> interactions with co-workers and the public.

[Id. at 24-25.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ

concluded that plaintiff is unable to perform her past relevant work as a parking lot attendant and

as a server.  [Id. at 28, 57-58.]  At step five, based on plaintiff's RFC, vocational factors, and the

VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national

economy that plaintiff can perform, including work as a "packager" (Dictionary of Occupational

Titles ("DOT") No. 559.687-074), as an "assembler" (DOT No. 929.587-010), and as an "inspector"

(DOT No. 920.687-194).  [AR at 29.]  Accordingly, the ALJ determined that plaintiff was not

disabled at any time from the alleged onset date of December 1, 2014, through July 12, 2018, the

date of the decision.  [Id.]

---

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional
limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149,
1151 n.2 (9th Cir. 2007) (citation omitted).

[4]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg controls. To be considered capable of
performing a full or wide range of light work, you must have the ability to do substantially all of
these activities. If someone can do light work, we determine that he or she can also do sedentary
work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she:  (1) evaluated the physician opinions and medical evidence of record; (2) determined plaintiff's severe impairments at step two; and (3) determined plaintiff's RFC.  [JS at 3.]  As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## **A.    LEGAL STANDARDS FOR STEP TWO DETERMINATIONS AND MEDICAL OPINIONS**

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months.  Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508 (effective through March 26, 2017), 404.1509, 404.1520(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment").  This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508 (effective through March 26, 2017).  The Commissioner's regulations define "symptoms" as a claimant's own description of her physical or mental impairment.  20 C.F.R. § 404.1528 (effective through March 26, 2017).  "Signs," by contrast, "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques."  Id.  Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  Id.  A claimant's statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish that there is a physical or mental impairment."  Id.

Step two is "a de minimis screening device [used] to dispose of groundless claims."

Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520.  An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "de minimis" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 404.1521(a).  "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ."  20 C.F.R. § 404.1521(b).  It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations.  See SSR 85-28.

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments."  Webb, 433 F.3d at 687 (citing Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

With respect to an ALJ's consideration of medical opinions, "[t]here are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5]  The Ninth Circuit has recently reaffirmed

---

[5]     The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your
(continued...)

that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original).  Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Lester</u>, 81 F.3d at 830; <u>Garrison</u>, 759 F.3d at 1012 (citing <u>Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830; <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." <u>Trevizo</u>, 871 F.3d at 675 (citing <u>Ryan</u>, 528 F.3d at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> (citing <u>Ryan</u>, 528 F.3d at 1198).  When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. <u>Trevizo</u>, 871 F.3d at 676; <u>see</u> 20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the

<hr/>

[5](...continued)
medical sources." 20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. <u>See</u> 20 C.F.R. § 404.1520c; <u>see also</u> 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. <u>See also</u> 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

1  [treating or examining] doctors', are correct." Id.

2       Although the opinion of a non-examining physician "cannot by itself constitute substantial

3  evidence that justifies the rejection of the opinion of either an examining physician or a treating

4  physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians,

5  psychologists, and other medical specialists who are also experts in Social Security disability

6  evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554

7  F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in

8  determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the

9  claimant's functional limitations).  Reports of non-examining medical experts "may serve as

10 substantial evidence when they are supported by other evidence in the record and are consistent

11 with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

12

13 **B.**    **DISCUSSION AND ANALYSIS**

14      Plaintiff contends that the ALJ erred in "rejecting or ignoring treating, examining and

15 medical expert physician opinions that supported finding fibromyalgia a severe impairment and

16 a more restrictive RFC." [JS at 3.] She states that the ALJ's rejection of "more restrictive opinions

17 relied on conclusory remarks and mischaracterization and were devoid of analysis or reasoning

18 to support the ALJ's conclusions."  [Id. at 4.]  Specifically, she argues that the ALJ merely

19 concluded, without explanation, that the medical expert's opinions (that plaintiff was limited to

20 sedentary work and that her fibromyalgia was a severe impairment) were rejected, and

21 mischaracterized the opinions of her treating physician, Dr. Galat, relating primarily to plaintiff's

22 mental health limitations, as being "from an unknown source at county mental health department"

23 and "inconsistent with the general clinical findings, degree of treatment and findings of other,

24 identified medical sources." [Id. (citing AR at 27) (internal quotation marks omitted).] Plaintiff also

25 observes that although the ALJ provided a summary "of a portion of the medical evidence and

26 stated that opinion evidence was considered in accordance" with the regulations, she nevertheless

27 "failed to assign weight to any additional opinions in the record or to explain weight afforded to .

28 . . any other opinions." [Id. (citing AR at 19-23, 20 C.F.R. § 404.1527).]  Plaintiff

1  concludes that, as a result, "[i]t is unclear what evidence and opinions the ALJ relied on in

2  formulating the RFC." [Id. at 16.]

3        Specifically, in rejecting the opinion of the medical expert, Reuben Beezy, M.D. that plaintiff

4  was limited to sedentary work, and finding that plaintiff's fibromyalgia was not "more than [a] slight

5  impairment,"[6] the ALJ stated the following:

6  As of a February 2017 medical visit with Dr. [M.] Ziyad Kattih, [plaintiff] complained
   of chronic body pain aggravated by activity and certain foods associated with a
7  diagnosis of fibromyalgia. [She] noted that various prescribed medications initially
   helped (e.g., Neurontin, Lyrica), but she developed negative side effects, so she
8  was only using non-prescription pain medications. Upon examination, [she]
   displayed multiple trigger points and some joint tenderness, and was diagnosed with
9  fibromyalgia and cervicalgia/cervical disc disease, and prescribed different
   medications. [She] reported improvement with the new medications as of March
10 2017.

11 At the February 2018 hearing, after reviewing the available medical evidence, Dr.
   Beezy diagnosed [plaintiff] with asthma, intermittent abdominal distress/diarrhea,
12 lower extremities edema, neck pain, vertigo, fibromyalgia, migraines, and at least
   a single small seizure, and assessed her as limited to sedentary work activity with
13 occasional postural movements, no climbing, no driving, no working around
   environmental irritants, and no working around machinery.

14 . . . .

15
   Although [plaintiff's] application alleges that she is unable to work due, in part, to
16 hearing and vision problems, brain injury [from multiple car accidents], neurological
   abnormalities, lupus, vertigo, seizures, traumatic brain injury, irritable bowel
17 syndrome and fibromyalgia, the evidence does not support the conclusion that she
   cannot perform gainful activity due to any such impairments. [¶] . . . There is also no
18 evidence [plaintiff] has experienced chronic fibromyalgia-like symptoms, and
   associated trigger points were only noted on a single occasion in 2017, with [plaintiff]
19 reporting improvements in her pain with the use of new medications. . . .

20 Therefore, the undersigned finds [plaintiff] has no medically determinable
   impairments related to lupus, brain injury, or hearing or vision loss, and no more
21 than slight impairments related to seizures, fibromyalgia, vertigo, or gastrointestinal
   disorders, which medical evidence establishes as having no more than a minimal
22 effect on her ability to perform basic-work-related activities. Therefore, [plaintiff]
   does not have a severe impairment related to seizures, fibromyalgia, vertigo, or
23 gastrointestinal disorders.[FN]

24 [FN] For the above-cited reasons, the undersigned rejects Dr. Beezy's testimony
   regarding finding these impairments to be severe.
25

26

27
       [6]   This issue is closely related to and impacts on plaintiff's claim that the ALJ erred when she
28 formulated plaintiff's RFC, which will not be considered separately herein.

1   [Id. at 21-23 (citations omitted).]  The ALJ also stated that she rejected "Dr. Beezy's testimony

2   assessing [plaintiff] as limited to sedentary work activity, as such an assessment is inconsistent

3   with the medical evidence, findings, degree of treatment, and [plaintiff's] ongoing seasonal work

4   activity as discussed above."  [Id. at 28.]

5       Plaintiff contends that the record evidence demonstrates that she was diagnosed with

6   fibromyalgia in September 2015 by her treating rheumatologist, Joshua Levy, M.D.  [JS at 35

7   (citing AR at 796).]  She notes that Dr. Levy "consistently diagnosed fibromyalgia and provided

8   examination notes specifically stating that [plaintiff] exhibited the 18+ positive trigger points on

9   examinations required by [Social Security Ruling] 12-2p in August 2017."  [Id. (citing AR at 1176).]

10  Similarly, plaintiff's treating physicians, including her primary care and pain management

11  physicians, "consistently diagnosed fibromyalgia with widespread chronic pain throughout the

12  record and consistently note symptoms of pain and weakness associated with fibromyalgia."  [Id.]

13  For instance, she notes that her pain management physician, Dr. Kattih, "reported multiple positive

14  trigger points on examination and diagnosed fibromyalgia consistently between February 2017 and

15  January 2018."  [Id. at 35-36 (citing AR at 1201, 1203, 1205, 1207, 1209; see also id. at 1211).]

16  She argues that she has "provided sufficient medical evidence to establish that she met both the

17  1990 and 2010 diagnostic criteria for fibromyalgia as the medical evidence repeatedly indicates

18  that she exhibited tender points on examination and documents co-occurring conditions including

19  depression, anxiety disorder, gastrointestinal issues including GERD and IBS, cognitive

20  impairments, migraines and headaches, vertigo and restless leg syndrome."  [Id. at 36.]

21      Plaintiff also notes that the medical expert, Dr. Beezy, after reviewing the records and after

22  listening to plaintiff's hearing testimony, properly found that plaintiff's fibromyalgia, along with a

23  number of other impairments, was a severe impairment.  [Id. at 35.]  She notes that Dr. Beezy

24  testified that plaintiff's severe impairments of fibromyalgia, lower extremities edema, and asthma

25  cause her to be limited to a range of sedentary work with standing or walking for no more than two

26  hours a day, occasional postural limitations; no ladders, ropes, or scaffolds; no heights or

27  machinery; and no pulmonary irritants.  [Id. (citing AR at 52-53).]  Dr. Beezy also testified that he

28  was familiar with and used the 1990 and 2010 criteria for arriving at his conclusion that plaintiff has

1  the severe impairment of fibromyalgia, and that it was his opinion that plaintiff's impairments and

2  limitations went back at least to June 2014.  [Id. (citing AR at 53-54).]

3        Plaintiff asserts that the ALJ failed to address the *consistencies* between Dr. Beezy's

4  testimony and the medical records documenting her fibromyalgia pain and lower extremities

5  edema, both of which are "exacerbated by physical activity and prolonged standing." [AR at 16

6  (citing AR at 53-54).]  She argues that the ALJ's rejection of Dr. Beezy's medical expert opinion

7  that plaintiff was limited to sedentary work was "devoid of analysis or reasoning to support" her

8  conclusion. [JS at 4 (citing AR at 28, 51-53).]  Plaintiff submits that the ALJ "erred in substituting

9  her own lay opinion for that of competent medical opinions" in formulating the RFC assessment.

10  [Id. at 17 (citations omitted).]  She also submits that the ALJ's failure to include fibromyalgia as a

11  severe impairment was not harmless because the ALJ failed to take into consideration plaintiff's

12  documented widespread chronic pain, fibromyalgia symptoms, and co-occurring conditions in

13  formulating the RFC.  [Id.]

14        Plaintiff also cites to other records she claims were "apparently" rejected by the ALJ, and

15  that provide support for Dr. Beezy's opinions that plaintiff's fibromyalgia is a severe impairment

16  and that she is limited to sedentary work, and that also demonstrate additional limitations resulting

17  from plaintiff's chronic lower extremities edema, her fibromyalgia, and/or due to her impaired

18  mental functioning.  [Id. at 5-13.]  For instance, she cites to the following:

19      (1)   Records from Northeast Valley Health Corporation, where she received treatment

20          from December 2014 through November 2017, including treatment by Jennifer

21          Hoffman, M.D., and Nurse Practitioners ("NP") Carrie A. Matyac[7] and Eric Williams.

22          In April 2015, for instance, NP Matyac noted "severe 4+ edema in the bilateral lower

23          extremities" [AR at 405]; continued swelling in May 2015 [id. at 401]; ongoing edema

24          in the bilateral legs with 3+ non-pitting edema on examination on June 10, 2015 [id.

25          at 377]; a notation on June 12, 2015, by NP Matyac that plaintiff had been to the

26

27  _____

28      [7]   Throughout the Joint Stipulation the parties refer to NP Matyac as NP "Maytac."  According to the medical records, the correct version is "Matyac."  [See, e.g., AR at 406.]

emergency department about five times in the last two months for edema, and noting she had edema on her legs at that visit, as well as difficulty breathing and shortness of breath -- at that visit, plaintiff was sent by ambulance to the emergency department [id. at 374]; in July 2015 Dr. Hoffman saw plaintiff for several visits complaining of shortness of breath, lower extremity edema and pleuritic pain, which had been occurring for about three months both with exertion and at rest, and opined she could have an underlying rheumatological disorder, or other autoimmune disorder [id. at 363, 365, 466]; in October 2015 Dr. Hoffman reported diffuse body pain, especially at the joints; in November 2015 he noted plaintiff was seeing a rheumatologist monthly for her fibromyalgia; and in December 2015 he noted she had been seen by a rheumatologist for fibromyalgia and was taking Cymbalta [id. at 839, 849, 851, 855]; in March 2016 plaintiff continued to experience generalized body pain and non-pitting edema and Dr. Hoffman diagnosed lower extremity edema and fibromyalgia, and advised plaintiff to wear compression stockings, limit salt, and elevate her legs for the edema [id. at 806, 808]; and, in August and September 2016, plaintiff presented to NP Williams with edema and it was noted that plaintiff had not heard back about pain control treatment and was having difficulty scheduling pain management appointments for her fibromyalgia [id. at 1274, 1277, 1279, 1282];

(2)    Dr. Galat:  plaintiff began treating with Absalon Galat, M.D. in October 2016, at which time he noted diagnoses of fibromyalgia and lymphedema in the lower extremities, among other things [id. at 1269]; his records reflect that plaintiff experienced edema through December 2016 "when she was awaiting a second course of treatment for chronic lymphedema" [id. at 1260]; in February 2017, Dr. Galat diagnosed migraines triggered by stress [id. at 1258]; in August 2017 plaintiff presented with a headache and reported she had a flare up of fibromyalgia pain in her neck [id. at 1226]; Dr. Galat diagnosed fibromyalgia in October and November 2017, and in November 2017 stated that plaintiff "suffered from acute pain due to

fibromyalgia," as well as dizziness, and requested a metal shower bar for plaintiff "to hold on to in the case of acute dizziness or pain" [id. at 1213, 1215, 1222.] Plaintiff complains that Dr. Galat's opinions and limitations relating to plaintiff's mental residual functional capacity as reflected on a January 2018 Mental Residual Functional Capacity Questionnaire completed by Dr. Galat, were discredited by the ALJ as a "January 2018 report from a source at the county mental health, . . . [by an] 'unknown . . . doctor or other treating source,' that diagnosed anxiety with marked deficits in virtually all work-related mental functioning and frequent impairment-related work absences." [JS at 8-10 (citing AR at 22, 1195-99).] The ALJ also found Dr. Galat's opinion regarding plaintiff's mental RFC to be "inconsistent with the general clinical findings, degree of treatment and findings of other, identified medical sources." [id. at 10 (citing AR at 27).] Plaintiff states that the form, however, clearly included Dr. Galat's printed name, his signature and the dates of treatment, and the printed name, address, and telephone number of Northeast Valley Health Corporation. [id. (citing AR at 27, 1195, 1199).] She also contends that although the ALJ limited plaintiff to simple routine tasks and occasional interaction with co-workers and the public, the RFC assessment "failed to account for significant additional limitations found in Dr. Galat's opinion," including, but not limited to, off-task issues; absenteeism; maintaining attention, concentration, and pace for extended periods; low tolerance to loud noise; responding appropriately to criticism from supervisors; and maintaining socially appropriate behavior [id. at 10 (citing AR at 1196-97)];

(3)   Valley Vascular Associates:  plaintiff notes she was treated by Ihab Aziz, M.D. for bilateral leg pain and swelling from August 2015 through June 2017.  [Id. (citing AR at 676).]  In October 2015, Dr. Aziz referred plaintiff to a lymphedema clinic.  [AR at 679.]  Plaintiff notes that in August 2015 she presented on examination with non-pitting edema in the bilateral lower extremities, and her symptoms and examination findings were consistent through October 2016.  [JS at 10 (citing AR at 678, 680,

1000, 1002, 1004).] Dr. Aziz noted minimal relief with the use of pressure stockings [AR at 1000, 1004], and in July 2016 noted slight improvement with lymphedema therapy (which may have included "lower extremity pneumatic pump therapy"). [Id. at 1002; see also id. at 1279.] Although one year later, in June 2017, Dr. Aziz reported "significant improvement with lymphedema therapy," plaintiff continued to have non-pitting edema of the bilateral lower extremity extending to the lower thigh. [Id. at 1002, 1006-07.] Plaintiff submits that the ALJ's RFC assessment for light work is not consistent with Dr. Aziz' reports indicating that plaintiff's edema worsens with prolonged standing [JS at 11 (citing AR at 19, 25, 676)];

(4) Dr. Levy, Rheumatologist: Plaintiff first saw Dr. Levy in August 2015 for "numbness, muscle and joint pains affecting the elbows, arm, feet, legs and lower back." [AR at 797.] In September 2015, Dr. Levy diagnosed fibromyalgia, along with edema. [Id. at 795.] In March 2016, he noted tenderness to palpation in plaintiff's joints on examination. [Id. at 794.] He continued to treat plaintiff and to diagnose fibromyalgia through December 2017. [Id. at 1175-77, 1185, 1187.] In June 2017, Dr. Levy found positive trigger points on examination. [Id. at 1177.] In August 2017, plaintiff reported she was feeling stable but still had pain in all of her body, and Dr. Levy noted 18+ positive trigger points on examination. [Id. at 1176.] In December 2017, Dr. Levy reported active fibromyalgia tender points on examination. [Id. at 1175.] Plaintiff contends the ALJ erred in finding fibromyalgia to be a non-severe impairment and in "apparently ignoring or rejecting Dr. Levy's diagnoses and examination findings" [JS at 12 (citing AR at 23)]; and

(5) Pain Management with Nouriel Niamehr, D.O. and Dr. Kattih: Dr. Niamehr treated plaintiff's reported pain -- affecting the arm, head, hip, knee, and neck at a 9 out of 10; difficulty walking with leg pain and bilateral hip pain rated at 9 out of 10; aggravated by walking, exercise, and cold weather; and alleviated by rest, pain medication, and massage -- from January to June 2016. [Id.] Dr. Niamehr noted that physical therapy had not been effective in relieving pain and pain medications

had been partially effective.  [AR at 777.]  He diagnosed her with cervicalgia and myofascial muscle pain, gave her an epidural steroid injection in the cervical spine in June 2016, and reported consistent examination findings and diagnoses in March and May 2016.   [Id. at 777, 788, 953, 955.]   Plaintiff asserts that the RFC assessment failed to include any consideration of her difficulty with walking or pain aggravated by physical activity and, therefore, the ALJ "apparently reject[ed] the records of pain management physician Dr. Niamehr, who provided records documenting difficulty walking and pain aggravated by physical activity." [JS at 25 (citing AR at 775).]  From February 2017 to January 2018, plaintiff's pain was treated by Dr. Kattih.  [Id. at 12-13, 25.]  She presented with a history of chronic pain syndrome with over three years of "intractable joint and body pain that was constant with good days and bad days."  [AR at 1201.]  She reported that physical activity caused pain flare ups, and on examination she was found to have multiple trigger points in the cervical paraspinals, around shoulders and elbows, lower lumbar paraspinals, lumbosacral region over the buttocks, around the hip muscles and knee, tenderness around the joints, and trace edema.  [JS at 13.]  Dr. Kattih diagnosed chronic pain, fibromyalgia, neck pain, cervical radiculopathy, cervical disc disease, low back pain, and depression, and reported consistent examination findings and diagnoses from March 2017 to January 2018.  [Id. (citing AR at 1203, 1205, 1207, 1209, 1211).]  Plaintiff contends the ALJ erred "in apparently rejecting or ignoring Dr. Kattih's report documenting ongoing fibromyalgia and chronic pain symptoms with significant clinical findings and diagnoses."  [Id. (citing AR at 23).]

In summary, the records discussed above reflect that plaintiff was treated at Northeast Valley Health Corporation from late 2014 through approximately August 2017 for fibromyalgia and bilateral lower extremities edema; by Dr. Galat from approximately October 2016 through January 2018 for fibromyalgia, bilateral lower extremities edema, and mental health issues; by Dr. Aziz at Valley Vascular Associates from August 2015 through June 2017 for bilateral lower extremities edema; by rheumatologist Dr. Levy, who first diagnosed plaintiff with fibromyalgia in August 2015,

and treated her for her fibromyalgia through at least December 2017; and by pain management specialists Dr. Niamehr and Dr. Kattih from approximately January 2016 through January 2018 for pain related to her fibromyalgia and lower extremities edema.

Defendant responds to plaintiff's arguments, contending that after reviewing the record as a whole, the ALJ "formulated a detailed and thoughtful RFC that was consistent with the record as a whole." [Id. at 18.] He argues that an ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted, and that in order to do so, "an ALJ must give good reasons that are supported by substantial evidence." [Id. at 18, 19.] He notes that with respect to Dr. Beezy's opinion that plaintiff's fibromyalgia is a severe impairment and that plaintiff was limited to sedentary work, the ALJ properly afforded it little weight because it was not supported by the record. [Id. at 23-24 (citing AR at 28, 53).] He points out that the ALJ found plaintiff "continued to work despite her ongoing physical issues," and found that a limitation to sedentary work was inconsistent with the record, as there is "no record of any significant deficits in mobility or gait associated with this," and "multiple records indicate 'no edema', mild or trace edema or 'generalized edema' and normal gait, with little to no issues with her lower extremities." [Id. at 24 (citing AR at 356, 360, 364, 369, 373, 377, 381, 385, 389, 401, 409, 442, 467, 471, 474, 483, 487, 491, 495, and others).] Defendant also argues that the ALJ "properly evaluated Plaintiff's fibromyalgia and found it non-severe," and thereby properly rejected "Dr. Beezy's unsupported restriction to sedentary work because it was not consistent with the record as a whole." [Id. at 24-25 (citing AR at 24-25).]

The Court finds that plaintiff has made at least a de minimus showing at step two with respect to demonstrating that her fibromyalgia is a severe impairment, and also finds that the ALJ's determination that plaintiff's fibromyalgia was *not* a severe impairment at step two was not supported by substantial evidence. The ALJ failed to provide specific and legitimate reasons for rejecting Dr. Beezy's opinions -- including his opinions that plaintiff's fibromyalgia was a severe impairment and that she is limited to sedentary work with certain limitations -- and for apparently discounting or rejecting without explanation the findings and opinions of plaintiff's other treating providers over a more than three-year period (from June 2014 through at least January 2018) as

detailed above.  Although in rejecting Dr. Beezy's opinion that plaintiff is limited to sedentary work activity the ALJ relied on the fact that plaintiff continued to work as a parking lot attendant at Dodger Stadium [AR at 28], that work was seasonal, for approximately three months of the year, and for a limited number of hours.  [AR at 45.]  Dr. Beezy, moreover, did not opine that plaintiff was limited to sedentary work for only three months out of the year -- in limiting her to sedentary work (with certain limitations), he apparently agreed that plaintiff could perform such work over the course of a twelve-month period.  Although the ALJ also surmised that "[t]here is no indication [plaintiff] could not continue to perform such work, or similar work activity on a non-seasonal basis, and no evidence [plaintiff] has attempted to look for similar or other work during the baseball off-season," she made this statement in the context of discounting plaintiff's subjective symptom testimony of total disability, a determination that is not at issue herein.  [Id. at 27.]  Additionally, the record reflects that plaintiff testified that in 2017 she was only working as a parking attendant for about 15 hours monthly, because she could not work "with the chronic pain, developed certain allergies, [and] chronic fatigue."  [Id. at 45.]  When plaintiff's counsel asked whether she would still be calling in sick if she had an "easy job," plaintiff testified that "[e]ven Dodger Stadium was an easy job, and I called off a lot or at the last minute."  [Id. at 48.]  Indeed, the ALJ noted that plaintiff's earnings records reflect that between 2015 and 2017 her earnings decreased substantially -- from $7,273 in 2015, to $5,244 in 2016, and to "around" $3,000 in 2017, lending further support to Dr. Beezy's opinion that plaintiff's fibromyalgia was a severe impairment and that her severe impairments resulted in an RFC to sedentary work[8] with respect to a 40-hour workweek, with other limitations.  [Id. at 19 (citing id. at 256-58).]

With respect to plaintiff's bilateral lower extremities edema, the ALJ stated that this condition "has not been associated with any chronic kidney or cardiac dysfunction," "has generally been treated with medications and compression stockings," and has caused no "significant deficits of gait or mobility."  [Id. at 26.]  The ALJ again failed to explain, however, how bilateral lower

---

[8]    Not all of plaintiff's earnings resulted from her work as a parking attendant at Dodger Stadium; some appear to have been earned from another source.  [See AR at 247-58.]

extremities edema, treated with medication, compression stockings, *and* lymphedema therapy, and for which it was recommended that she elevate her legs, necessarily results in deficits in mobility or gait, or that unless it is associated with chronic kidney or cardiac dysfunction, is somehow such that an individual can nevertheless be on his or her feet, walking and/or standing, for six hours in an eight-hour workday, and notwithstanding the fact that the records document that she experiences difficulty with walking and pain aggravated by physical activity.  Indeed, the medical expert, Dr. Beezy, reviewed this same evidence and determined -- notwithstanding plaintiff's treatment regimen for her lymphedema, no "significant deficits in mobility or gait," and no "chronic kidney or cardiac dysfunction" -- that in his expert medical opinion, plaintiff's severe impairment of lower extremities edema, along with her severe impairments of fibromyalgia, and asthma necessitated an RFC limitation to sedentary work, including standing and walking for no more than two hours a day; occasional postural limitations; no ladders, ropes, or scaffolds; no heights or machinery; and no pulmonary irritants.  It appears, therefore, that in discounting the opinions of Dr. Beezy, the ALJ improperly substituted her own lay opinion for the expert medical opinion.  The ALJ may not substitute her lay opinion (here, in determining that, contrary to the medical expert's opinion, plaintiff's fibromyalgia was not a severe impairment and that the limitations resulting from her severe impairments resulted in a limitation to a range of sedentary work), for that of a medical professional.  See Tackett, 180 F.3d at 1102-03.

Indeed, the Court's review of the record reflects that plaintiff was consistently treated for chronic lymphedema and the pain associated with her fibromyalgia and/or lymphedema, from late 2014 through at least January 2018.  The ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discounting the expert opinions of Dr. Beezy that plaintiff has the severe impairment of fibromyalgia, and that she is limited to a range of sedentary work, and by implicitly rejecting and/or discounting the opinions of plaintiff's other treating providers, Drs. Hoffman, Aziz, Levy, Galat, Niamehr and Kattih, and NPs Matyac and Williams regarding plaintiff's fibromyalgia pain and limitations from that, her bilateral extremities edema, and her other severe

1   impairments.[9]

2     Remand is warranted on this issue.

3

4   **VI.**

5   **REMAND FOR FURTHER PROCEEDINGS**

6     The Court has discretion to remand or reverse and award benefits.  <u>Trevizo</u>, 871 F.3d at

7   682 (citation omitted).  Where no useful purpose would be served by further proceedings, or where

8   the record has been fully developed, it is appropriate to exercise this discretion to direct an

9   immediate award of benefits.  <u>Id.</u> (citing <u>Garrison</u>, 759 F.3d at 1019).  Where there are outstanding

10  issues that must be resolved before a determination can be made, and it is not clear from the

11  record that the ALJ would be required to find plaintiff disabled if all the evidence were properly

12  evaluated, remand is appropriate.  <u>See</u> <u>Garrison</u>, 759 F.3d at 1021.

13    In this case, there are outstanding issues that must be resolved before a final determination

14  can be made.  In an effort to expedite these proceedings and to avoid any confusion or

15  misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

16  proceedings.  First, the ALJ on remand shall include plaintiff's fibromyalgia as a severe

17  impairment.[10]  Second, because the ALJ failed to provide specific and legitimate reasons

18  supported by substantial evidence for discounting the opinions of Dr. Beezy and Dr. Galat, and

19  for rejecting or discounting the findings of plaintiff's treating providers generally, the ALJ on

20  remand shall reassess the medical opinions of record, including the opinions of Dr. Beezy and Dr.

21  Galat.  The ALJ must explain the weight afforded to each opinion and provide legally adequate

22

23  ————————————————

24    [9]   Because the matter is being remanded for reevaluation of the medical evidence of record, the Court does not determine herein whether the ALJ provided clear and convincing reasons

25  supported by substantial evidence for discounting the mental health opinions of Dr. Galat.  Dr. Galat's opinions shall be reconsidered on remand.

26    [10]   Nothing in this opinion is intended to disrupt the ALJ's determination that at the least,

27  plaintiff suffers from the severe impairments of asthma; headaches; lower extremity edema; cervical spine disc disease/cervicalgia; obesity; and depressive disorder, or her determination that

28  plaintiff is unable to perform her past relevant work as a parking lot attendant or as a server.

reasons for any portion of an opinion that the ALJ discounts or rejects.  Third, the ALJ on remand, in accordance with SSR 16-3p,  shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  August 25, 2020

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE